IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 13 |
| | : |
| MARYANN MINOR | : |
| DEBTOR(S) | : BANKRUPTCY NO. 08-10108 SR |

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

**Introduction.**

HSBC Mortgage Corporation has objected to confirmation of the Debtor's Chapter 13 Plan. The Debtor, in turn, has objected to HSBC's Proof of Claim. A hearing on the objections was held on October 1, 2008, after which the parties submitted briefs on the limited question of whether HSBC is precluded from objecting to confirmation. The Court took that matter under advisement.

*Factual Background*

HSBC holds the note and mortgage on the Debtor's home. The principal loan amount is $31,6000, payable over 15 years, and accrues interest at fixed rate of 11.625%. The loan was made in October 30,1997 and the last payment is due November 4, 2012. *See* Note and Mortgage attached to Proof of Claim. It is also in default. The Debtor's Schedules list the HSBC secured debt at $42,000. *See* Schedule A. HSBC's Proof of Claim is in the amount of about $56,000 with no arrearages claimed. *See* Proof of Claim. The Plan, however, proposes to pay HSBC $35,000 over 60 months at 7% interest. This prompted an objection to confirmation from HSBC.

The Debtor, in turn, objected to the HSBC claim.

*HSBC's Claim*

There appears to be no dispute that HSBC's claim is secured solely by a mortgage on the Debtor's home. That circumstance often limits how a debtor may deal with the claim in a Chapter 13 plan. The Code provides that a Chapter 13 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*...." 11 U.S.C. § 1322(b)(2) (emphasis added). Put more directly, the anti-modification clause bars a debtor from modifying the rights of a creditor who has a claim secured only by the debtor's principal residence. *In re McDonald*, 205 F.3d 606, 609 (3d Cir.2000). That clause, however, is not without exceptions:

> Notwithstanding subsection (b)(2) and applicable non-bankruptcy law---
> ...
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2). The last payment on the Debtor's loan from HSBC is due November 4, 2012; the last payment under her Chapter 13 plan will be made January 2013. Because the *last loan payment* precedes the *last plan payment*, the Debtor's treatment of HSBC qualifies for the exception to the antimodification rule of § 1322(b)(2). In other words, the HSBC secured claim may be crammed down pursuant

2

to § 1325(a)(5). Where the parties disagree is on the *amount* which must be paid on that claim.

*The Parties' Positions*

The Debtor argues that principles of res judicata bind HSBC to accept the amount proposed in her plan. That amount, she explains, derives from a prior bankruptcy. In that earlier case, she goes on, the Debtor proposed a lesser amount to HSBC's predecessor[1] who did not object. That plan was subsequently confirmed and this, she concludes, settled the question of what the Debtor owes HSBC on this loan.

For its part, HSBC disputes the central premise of the Debtor's argument. It contends that confirmation of the prior plan has no bearing on this case. The main case in which that plan was confirmed, HSBC emphasizes, was *dismissed*. Under Code § 349, dismissal restored to HSBC all those prepetition property rights which it had in the Debtor's home. As a result, the pending plan's proposed treatment of HSBC's claim is to be judged independently of anything that happened in the prior case. The pending plan does not pay HSBC the present value of its claim; therefore, it may not be confirmed.

*Substantive Rights;*
*Procedural Rules*

The crux of the parties dispute is over the applicable law. Where HSBC relies on a specific, substantive provision of the Bankruptcy Code, the Debtor rests on a

---

[1] The previous holder of the note and mortgage appears to be Champion Mortgage Company.

3

procedural rule of preclusion. The interplay of federal statutes and rules is dealt with in the Rules Enabling Act:

> (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.
>
> (b) *Such rules shall not abridge, enlarge or modify any substantive right.* All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

28 U.S.C. § 2072 (a), (b) (emphasis added). The extent to which a statute affords a substantive right is a function of the breadth of the remedy. *See U.S. Express Lines, Ltd v. Higgins*, 281 F.3d 383, 392 (3d Cir.2002). The Supreme Court has held that "rules which *incidentally* affect litigants' substantive rights do not violate" § 2072 if they are "reasonably necessary to maintain the integrity of that system of rules." In *Burlington Northern Railway Co. v. Woods*, 480 U.S. 1, 5, 107 S.Ct. 967, 970, 94 L.Ed.2d 1 (1987) (emphasis added) For HSBC, the question becomes what rights are at stake and how would such rights be affected by application of res judicata?

*HSBC's Rights Upon Dismissal*

The substantive right that HSBC relies on is found in § 349 of the Bankruptcy Code:

> Effect of dismissal
>
> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title--
> ...
> (3) *revests the property of the estate in the entity in which*

4

> *such property was vested immediately before the commencement of the case under this title*.

11 U.S.C. § 349(b)(3) (emphasis added). "The basic purpose of the subsection [349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case. This does not necessarily encompass undoing sales of property from the estate to a good faith purchaser." H.R.Rep. No. 595, 95th Cong., 1st Sess. 338 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6294-95. Bankruptcy Judge Fox of this District notes that:

> The general idea behind § 349 is that the dismissal of a bankruptcy case should re-establish the rights of the parties as they existed when the petition was filed.... Indeed, unless the court indicates otherwise, the general effect of an order of dismissal is to "restore the status quo ante;" it is as if the bankruptcy petition had never been filed.

*In re Randall*, 358 B.R. 145, 168 (2006) *quoting In re Derrick,* 190 B.R. 346, 350 (Bankr.W.D.Wis.1995) (citations omitted); *see, e.g., In re Serrato,* 214 B.R. 219, 227 (Bankr.N.D.Cal.1997); *In re Lewis & Coulter, Inc.,* 159 B.R. 188, 190 (Bankr.W.D.Pa.1993); *In re Van Stelle*, 354 B.R. 157, 167-168 (Bankr.W.D.Mich.2006). see also *In re Nash*, 765 F.2d 1410, 1413 (9th Cir. BAP 1985) (holding that in the Chapter 13 context where a debtor has confirmed a plan but the case nevertheless is dismissed, the order of dismissal essentially acts to vacate the confirmed plan); *accord In re Keener*, 268 B.R. 912, 919 (Bankr.N.D.Tex. 2001); *In re Groves*, 27 B.R. 866, 868 (Bankr.D.Kan.1983); *In re Beasley*, 22 B.R. 773 n.1 (Bankr.W.D.Tenn.1982).

Under this provision, the effect of dismissal of the Debtor's prior case is to place

5

HSBC back in the position that it was in before the bankruptcy was filed. That position was the holder of a claim secured by a mortgage on Debtor's home *free of modification*. To use the exact words from the statute, it "revested" in HSBC the prepetition rights it had in the note and mortgage. Those rights had been altered by confirmation of the original plan, but dismissal of the case undid all of that. Precluding such a right certainly cannot be characterized as incidental.

Yet that is what the Debtor asks the Court to do. And the means by which the Debtor would have the Court act is the application of a rule of procedure. Res judicata, sometimes referred to as claim preclusion, is a rule of procedure. *See Davis v. U.S. Steel Supply*, 688 F.2d 166, 177 (3d Cir. 1982); *see also* 18 Wright & Miller, *Federal Practice and Procedure, Civil 2d* § 4401 et seq. As such, it may not be applied to deprive HSBC of a property right specifically set forth in the Bankruptcy Code. To allow otherwise would run afoul of a basic tenet of statutory construction. *See* 28 U.S.C. § 2072(b)

*Debtor's Arguments*

In the face of this authority, the Debtor steadfastly maintains that principles of preclusion do, indeed, apply. Her main argument for this proposition is offered in a rather unusual fashion. Debtor has attached to her brief another brief in a different case which her counsel has pending before Judge Sigmund of this District: *In re Nix-Pearson*, 07-10612. In that case, her counsel explains, the same argument that the Debtor is making here was successful. That, however, is not reflected by what is attached. The plan in that case (also attached) reveals that the secured creditor (HSBC

in that case as well) held two mortgages on the property. The first mortgage would be cured while the second would be paid off through the plan. *See* Third Amended Plan, Ex. E to Debtor's Brief. This plan was confirmed but the Confirmation Order does not state whether Judge Sigmund endorsed the res judicata argument raised here. There is similarly no transcript of any hearing from that case which might confirm counsel's representations. In fact, there is nothing in the attachments demonstrating that the second mortgage loan in that case would be paid less than the present value of the note. In other words, Debtor's submission raises as many questions as they do answers. As a consequence, the Court does not find it persuasive.

Where the Debtor comes close to addressing HSBC's premise,[2] she falls short. The Debtor's attempt to distinguish Code § 349 never speaks to the applicable paragraph. She argues that subsection (b)*(1)* has no bearing here. *See* Debtor's Brief, Ex.C, 1. She is correct: that provision "reinstates" avoided transfers and liens upon dismissal and HSBC holds no such interest. But it is subsection (b)*(3)* which speaks to the interest which HSBC does hold and upon which it relies. *See* 11 U.S.C. § 349(b)(3) (revesting prepetition property rights upon dismissal); *see also* HSBC Brief, 4. HSBC is the holder of a secured claim—a property right—which revested upon dismissal.

Neither does the Court find persuasive Debtor's reliance on *In re Ramirez*, 283 B.R. 156 (Bankr.S.D.N.Y.2002)[3] In *Ramirez*, the debtor had sought to strip down a

---

[2] *See Nix-Pearson* Brief, attached as Ex. C to Debtor's Brief.

[3] *See id*. n.2.

7

secured city tax claim. *Id.* at 158. After the Bankruptcy Court denied his request and allowed the tax claim as fully secured, the debtor decided upon an unorthodox strategy. He neither sought reconsideration nor filed an appeal as to the tax claim ruling. *Id.* Instead, the debtor dismissed his bankruptcy case—his third by that time— and filed a fourth. *Id.* In the new proceeding, he filed the very same motion to strip down the tax claim which had failed in the prior proceeding. *Id.* The city argued that the prior ruling in its favor was res judicata. *Id.* at 159. The debtor, in turn, relied on § 349(b)(3) arguing that the tax ruling was undone by dismissal. In ruling in favor of the city, the Court found that "while there is flexibility inherent in § 349, it must be given effect in such a way as to prevent creditors from being held in limbo by repeated filings." *Id.* at 160-161

There is nothing even remotely approaching such conduct here. Unlike the debtor in *Ramirez*, there is no indication that HSBC is trying to manipulate the bankruptcy process. For whatever reason, the prior holder (Champion) accepted the proposed treatment of its secured claim in the previous bankruptcy. After that case was dismissed and the Debtor filed the pending case, HSBC, the present holder, concluded that the payment proposed was insufficient and objected. HSBC was within its rights to do that. That the instant case was dismissed was—unlike the situation in *Ramirez*—no fault of HSBC. It was the Debtor who failed to make her plan payments. *See* Case No. 03-17007, ##77, 127, Motion to Dismiss and Order. The result of dismissal is that HSBC was restored to its position and its rights as they existed prepetition.

*Summary*

The Court ascribes no res judicata effect to the confirmed plan in Debtor's prior, dismissed bankruptcy case. HSBC's secured claim is to be judged independently of anything that transpired in the prior proceeding. That is not to say, however, that she is not entitled to receive credit for all payments made on this claim. On the contrary, she is.

The hearing in this matter has been continued to November 5, 2008. At that time the Court will readdress with the parties their disagreements over the components of the HSBC claim against the backdrop of the ruling herein.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
Chief, United States Bankruptcy Judge

Dated:   October 29, 2008